**Calvin R. POWELL, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 98–1675.

United States Court of Appeals for Veterans Claims.

Sept. 21, 1999.

Ronald L. Smith was on the briefs for the appellant.

Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel;

Mary Ann Flynn, Deputy Assistant General Counsel; and Gregory W. Fortsch were on the brief for the appellee.

Before HOLDAWAY, IVERS, and GREENE, Judges.

IVERS, Judge:

The veteran appeals from a May 15, 1998, Board of Veterans' Appeals (BVA or Board) decision which denied an increased rating for a low back disability, evaluated as 10% disabling prior to January 1995 and as 20% disabling from January 1995. Record (R.) at 11–12. The veteran's claims for a disability rating prior to January 5, 1995, in excess of 10% for a low back disability, and a rating under a diagnostic code (DC) other than DC 5292 after January 5, 1995, have been abandoned. The veteran has filed a brief and has replied to the Secretary's brief. This appeal is timely, and the Court has jurisdiction over the case pursuant to section 7252(a) of title 38, United States Code. For the reasons stated below, the Court will reverse the Board's decision.

## I. FACTS

The veteran served in the U.S. Marine Corps from May 30, 1979, to November 5, 1991. R. at 195. On January 23, 1992, he filed for VA compensation for a low back disability. R. at 195–200. In a May 5, 1992, rating decision, the regional office (RO) granted service connection and assigned a 10% evaluation for the veteran's chronic lumbar strain under DC 5295. R. at 215.

As a result of a May 16, 1994, VA examination, the veteran was diagnosed with "chronic lumbosacral strain." R. at 226. The examiner noted:

Physical examination showed [the veteran] can ambulate without difficulty. Exam[ination] of the spine shows no obvious deformity, kyphosis or scoliosis. He can forward flex 75%, extend bend and rotate 25%. He can raise onto his toes and heels and partially squat. Straight leg raising was negative. Reflexes are 1+ to 2+ and equal at the knee and at the ankle. He had some generalized decreased sensation in lateral and posterior aspects of his left calf. Strength was symmetric.

*Id.* In a June 6, 1994, rating decision, the RO continued the veteran's 10% evaluation. R. at 229.

The veteran was again treated for a low back disability on June 18, 1994. R. at 260. The examiner noted that the veteran was uncomfortable, but that he had no spinal process tenderness. *Id.* The veteran underwent an x-ray evaluation which resulted in the examiner's impression of degenerative joint disease. *Id.*

On January 5, 1995, the veteran underwent a VA neurological examination due to complaints of continued low back pain. R. at 281–85. The examining physician, Dr. S.L. Adusumilli, diagnosed the veteran's disability as "[i]ntervertebral disc syndrome with *severe limitation of motion,* paravertebral muscle spasm with no radiculopathy noted in the lower extremities" (emphasis added). R. at 282. While referring to the veteran's right and left lower extremities, the examiner noted, "Patient was unable to perform against resistance because of the pain in the back." R. at 281. Dr. Adusumilli also performed an orthopedic examination of the veteran. R. at 283–86. He noted, "There is paravertebral muscle spasm. There was tenderness elicited at L3, L4, L5, and S1 level. There was limitation of motion." R. at 283. He continued, "Patient had *pain on any type of movements* " (Emphasis added.). *Id.* Dr. Adusumilli again diagnosed the veteran's low back disability as "[i]ntervertebral disc syndrome with *severe limitation of motion* " (emphasis added). R. at 284.

In a February 3, 1995, rating decision, the RO increased the veteran's evaluation for his low back disability to 20%, effective January 5, 1995. R. at 289. On November 1, 1996, the Board remanded the vet-

eran's claim with instructions to the RO to further develop his claim and to schedule a VA examination of the veteran's low back. R. at 308–11. In response, on May 19, 1997, the veteran underwent a VA examination which did not contradict the previous VA examinations. The examiner stated:

> [The veteran] gets flare-ups ... about once a month.... When it flares up[,] he gets increasing pain, soreness and stiffness in the back that radiates in and around the pelvis area. He has to change positions a lot, prolonged sitting, standing aggravate it and any work requiring heavy repetitive bending and lifting is therefore more difficult ... to do and more difficult with flare ups. [The veteran] is not wearing a brace, not using a cane[,] ... he has no surgery and he takes only over the counter medications. Weather changes bother it to a degree.
>
> Physical examination of the spine shows no deformity, he has kind of hypersensitivity to touch throughout the back but no significant spasms identified. He could forward flexion today 65 degrees, stand, bend and rotate 20 degrees with pain throughout the ranges of motion.

R. at 325. The examiner diagnosed the veteran with "lumbosacral strain; arthritis" (*id.*) and added that during flare ups, the veteran's back disability would affect "his capability to work and do normal daily activities" (R. at 326).

On June 10, 1997, the veteran underwent a VA neurological, miscellaneous disorders examination. R. at 331–35. The examiner concluded that there was "no objective evidence of a significant radiculopathy on neurological exam. Straight leg raise test does not produce any radiating lower extremity pain. Reflexes, sensory examination are all intact and symmetric." R. at 334. The veteran was found to have a symmetric gait; however, he indicated to the examiner that he experienced pain in his left lower back while walking at moderate speeds. R. at 333.

In the May 15, 1998, decision now on appeal before the Court, the Board continued the veteran's disability rating under DC 5295. R. at 11–12.

## II. ANALYSIS

 The degree of disability under the VA schedule for rating disabilities is a finding of fact subject to the "clearly erroneous" standard of review. *See Smallwood v. Brown,* 10 Vet.App. 93, 97 (1997); *Lovelace v. Derwinski,* 1 Vet.App. 73, 74 (1990); *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA ... [the Court] cannot overturn them." *Id.* In addition, the Court may set aside the Board's selection of a diagnostic code in a particular case only if such selection is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A); *Butts v. Brown,* 5 Vet. App. 532, 539 (1993) (en banc).

 Section 4.71a of title 38, Code of Federal Regulations, includes DC 5292, which lists three possible compensable ratings based upon the limitation of motion of the lumbar spine. Those ratings appear as follows:

> 5292 Spine, limitation of motion of, lumbar:
>
> Severe.......... ..... 40
>
> Moderate........ ..... 20 .
>
> Slight........... ..... 10

38 C.F.R. § 4.71a (1998). In the veteran's January 5, 1995, VA neurological and orthopedic examinations, Dr. Adusumilli indicated that the veteran "had pain on any type of movements" and he twice diagnosed the veteran with "[i]ntervertebral disc syndrome with *severe limitation of motion*" (emphasis added). R. at 282, 284. At that time, pursuant to DC 5292,

the veteran was entitled to receive a 40% evaluation for his low back disability due to the severity of his condition. Instead, the veteran's disability rating was increased only to 20% (R. at 289) and, on appeal, the Board remanded the claim with instructions to the RO to further develop the claim and to schedule a VA examination of his low back. R. at 308–11. In its May 15, 1998, decision here on appeal, the Board relied upon the most recent (May 1997), VA neurological examination to determine that the veteran's condition had improved and thus did not warrant an increased rating. R. at 8–11. However, as the Secretary concedes, the May 1997 examination was inadequate because the examiner offered nothing more than what was noted in the previous VA examinations, which recorded decreased ranges of motion and noted that the veteran experienced pain throughout the range of motion. R. at 325–26. Therefore, due to the specific portrayal of severity provided by the January 1995 examinations, the absence of contradiction in the later examinations, the reduced ranges of motion, and the notation of pain throughout the ranges of motion in the May and June 1997 examinations, a reversal of the May 1998 decision is appropriate, with remand to assign a 40% evaluation, effective January 5, 1995. 38 U.S.C. § 5110(a) ("[u]nless specifically provided otherwise in this chapter, ... a claim for increase[ ] of compensation ... shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor."); 38 C.F.R. § 3.400(*o*)(1) and (2). Based upon the record, VA's assignment of a 20% disability rating for the veteran's condition under DC 5295 was erroneous as contrary to DC 5292. *See* 38 U.S.C. § 7261(a)(3)(A); *Butts, Smallwood, Lovelace,* and *Gilbert,* all *supra.*

In a July 20, 1999, oral argument before the Court, counsel for the Secretary argued that the Court's holding in *Francisco v. Brown,* 7 Vet.App. 55 (1994), precludes the Court from basing its determination upon anything but the May 1997 examination because it is the most recent examination. In *Francisco,* the Court held that the present level of disability is the most relevant to the disposition of the claim, and determined that the Board did not err in its reliance upon the most recent medical examination results in its denial of an increased disability rating under the applicable diagnostic code. *Id.* at 58; *see* 38 U.S.C. § 1110; *Brammer v. Derwinski,* 3 Vet.App. 223, 225 (1992) (stating that compensation for a service-connected disability is reserved for those claims which show a present condition). The Court reasoned: "Although a rating specialist is directed to review the recorded history of a disability in order to make a more accurate evaluation, ... the regulations do not give past medical reports precedence over current findings." *Francisco,* 7 Vet.App. at 58. However, the facts in *Francisco* vary from the facts of the present case.

In *Francisco,* the veteran argued that the Board's decision was clearly erroneous based upon its failure to adequately consider his entire medical history, including a medical examination performed in 1988, prior to the 1992 examination relied upon by the Board. *Id.* During a July 1988 orthopedic examination, the examiner indicated that the veteran's disability was causing a limited range of motion in his shoulder. *Id.* at 56. However, in a December 1989 final decision, the Board determined that the veteran was not entitled to an increased disability rating. *Id.* Following repeated attempts by the veteran to obtain an increased rating, the Board remanded the claim so that an orthopedic and neurological examination could be performed. *Id.* Based upon a March 1992 orthopedic examination (the most recent examination), the Board determined that the veteran was not entitled to an increased disability rating. *Id.* at 57. The Board relied upon the 1992 examination rather than the 1988 examination because the 1992 examination was adequate, and it was the most recent and relevant examination since the December 1989 final Board

decision. *Id.* at 58. The Board's reliance was not merely based upon the fact that the 1992 examination was the most recent examination. While the Court reasoned that the present level of disability is the issue to be decided, the Court's decision does not stand for the proposition that the most recent examination is necessarily and always *controlling. Cf. Fenderson v. West,* 12 Vet.App. 119 (1999) (The rule which provides that the present level of disability is of primary importance when entitlement to an increased rating is at issue, is not applicable to the assignment of an initial rating for a disability).

In this case, there were 2 relevant, *adequate* examinations of record (both in 1995), and a third (most recent) examination (May 1997) that, as the Secretary concedes in his brief, was inadequate. Secretary's Brief (Br.) at 10–12. However, the results of the 1997 examination did not appear to differ significantly from those in the 1995 examinations. Nevertheless, the Board erroneously relied upon the third (most recent) examination to infer improvement in the veteran's condition and deny the veteran's claim for an increased disability rating and, in doing so, failed to assign the proper evaluation under DC 5292. R. at 9. Therefore, the Board's decision was contrary to law (*Butts, Smallwood, Lovelace,* and *Gilbert,* all *supra*) and reversal is the appropriate remedy because there exists no plausible basis for the Board's decision in light of the January 1995 examinations. *Hicks v. Brown,* 8 Vet.App. 417, 422 (1995); *see also Hersey v. Derwinski,* 2 Vet.App. 91, 95 (1992). After remand, VA may examine the veteran at any time to determine whether his disability has improved or worsened. *See Schafrath v. Derwinski,* 1 Vet.App. 589, 595 (1991) ("Where the record does not adequately reveal the current state of the claimant's disability, a VA examination must be conducted.").

## III. CONCLUSION

Upon consideration of the veteran's briefs, the Secretary's brief, and the rec-

ord, the Court holds that the Board's failure to assign a 40% disability rating pursuant to DC 5292 was contrary to law. Accordingly, the Board's May 15, 1998, decision is REVERSED and the matter is REMANDED for the assignment of the proper evaluation and effective date.