Citation Nr: 1221995 
Decision Date: 06/22/12 Archive Date: 07/02/12

DOCKET NO. 10-45 909 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Entitlement to a compensable initial rating for bilateral hearing loss, prior to March 12, 2010.

2. Entitlement to an initial rating in excess of 20 percent for bilateral hearing loss from March 12, 2010. 


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

S.J. Janec, Counsel



INTRODUCTION

The Veteran had active military service from October 1956 to April 1957.

This matter comes before the Board of Veterans' Appeals (Board) from an October 2009 rating decision of the Seattle, Washington, Regional Office (RO) of the Department of Veterans Affairs (VA) that, in relevant part, granted service connection for bilateral hearing loss and assigned a noncompensable rating, effective November 20, 2006, the date the Veteran's claim was received.

In July 2011, the Board remanded the case for further evidentiary development. In an April 2012 rating decision, the RO granted a 20 percent rating for bilateral hearing loss, effective March 12, 2010. 

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2011). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. From November 20, 2006 through March 11, 2010, audiometric findings show that the Veteran had no worse than Level II hearing acuity in his right ear and Level IV hearing acuity in his left ear. 

12. From March 12, 2010, audiometric findings show that the Veteran had no worse than Level IV hearing acuity in his right ear and Level VI hearing acuity in his left ear. 



CONCLUSIONS OF LAW

1. From November 20, 2006 through March 11, 2010, the criteria for the assignment of a compensable initial rating for bilateral hearing loss were not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.159, 4.1, 4.2, 4.7, 4.10, 4.85, 4.86 including Diagnostic Code 6100 (2011). 

2. From March 12, 2010, the criteria for an initial rating in excess of 20 percent for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.159, 4.1, 4.2, 4.7, 4.10, 4.85, 4.86 including Diagnostic Code 6100 (2011). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2002) redefined VA's duty to assist the veteran in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2011). 

Duty to Notify

The notice requirements of the VCAA require VA to notify the veteran of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; what subset of the necessary information or evidence, if any, the VA will attempt to obtain; and a general notification that the claimant may submit other evidence that may be relevant to the claim. The requirements apply to all five elements of a service connection claim: veteran status, existence of a disability, a connection between the veteran's service and the disability, degree of disability, and effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Such notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (in this case, the RO). Id; see also Pelegrini v. Principi, 18 Vet. App. 112 (2004). However, insufficiency in the timing or content of VCAA notice is harmless if the errors are not prejudicial to the claimant. Conway v. Principi, 353 F.3d 1369, 1374 (Fed. Cir. 2004) (VCAA notice errors are reviewed under a prejudicial error rule). 

The Veteran's appeal of the initial rating assigned for bilateral hearing loss is a downstream issue, and additional VCAA notice is not required. 38 C.F.R. § 3.159(b)(3) (2011); see Hartman v. Nicholson, 483 F.3d. 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Rather, the Veteran's appeal as to the initial rating assignment triggers VA's obligation to advise the Veteran of what is necessary to obtain the maximum benefit allowed by the evidence and the law. 38 U.S.C.A. §§ 5104, 7105 (West 2002). 

The September 2010 statement of the case, under the heading "Pertinent Laws; Regulations; Rating Schedule Provisions," set forth the relevant diagnostic code for rating the disability at issue. The Veteran was thus informed of what was needed not only to achieve the next-higher schedular rating, but also to obtain all schedular ratings above that assigned. Therefore, the Board finds that the Veteran has been informed of what was necessary to achieve a higher rating for the service-connected disability at issue. 

The Board also observes the Court's holding in Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008), which focuses on VCAA notice requirements in an increased rating case. However, this case was recently overturned in part by the Federal Circuit. See Vazquez-Flores v. Shinseki, 580 F.3d. 1270 (2009). Hence, it need not be further discussed in this decision. Consequently, the Board finds that the duty to notify provisions have been satisfactorily met, and neither the Veteran nor his representative has pointed out any deficiencies that require corrective action. 


Duty to Assist

The record also reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran. Specifically, the information and evidence that have been associated with the claims file includes the Veteran's service treatment records, private and VA treatment reports, lay statements, the Veteran's statements, and two VA examination reports. 

The Board notes that VA examination reports reflect that the examiners reviewed the Veteran's past medical history, documented his current medical condition, and rendered appropriate diagnoses and opinions consistent with the remainder of the evidence of record, and with supporting rationale. Specifically, the audiological evaluation included studies necessary to rate the Veteran's bilateral hearing loss relevant to the rating criteria for that disability. Nieves-Rodriguez v. Peake, 22 Vet App 295 (2008). Consequently, the Board concludes that the medical examinations are adequate for evaluation purposes. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (holding that when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate). As such, the Board finds that there has been substantial compliance to the development directives requested by the Board in conjunction with this claim and VA's duty to assist has been met. Stegall v. West 11 Vet. App. 298 (1998). 

Analysis

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities (Schedule), found in 38 C.F.R. Part 4 (2011). The Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.1 (2011).

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2011). Consideration of the recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2 (2011); Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the veteran's medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31, 34 (1999). 

Where an increase in the disability rating is at issue, the present level of the veteran's disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, where entitlement to compensation has been established, but a higher initial disability rating is at issue, the extent of impairment throughout the entire period, beginning with the filing of the claim, must be considered and a determination must be made regarding whether "staged" ratings are warranted. See Fenderson v. West, 12 Vet. App. 119, 126-127 (1999) (when a disability rating is initially assigned, separate ratings should be considered for separate periods of time, known as staged ratings). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods (as in fact has already been done). 

The regulations require that where there is a question as to which of two evaluations is to be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2011). After careful consideration of the evidence, any reasonable doubt remaining should be resolved in favor of the veteran. 38 C.F.R. §§ 3.102, 4.3 (2011). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996). 

The criteria for evaluating hearing impairment call for the consideration of the results of examinations using controlled speech discrimination tests (Maryland CNC) together with the results of puretone audiometry tests. 38 C.F.R. § 4.85 (2011). These results are then charted on Table VI and Table VII, as set out in the Rating Schedule. In order to establish entitlement to a compensable or higher evaluation for hearing loss, it must be shown that certain minimum levels of the combination of the percentage of speech discrimination loss and average puretone decibel loss are met. 

Section 4.86 provides that hearing tests will be conducted without hearing aids. It also addresses exceptional patterns of hearing loss, for example, when the puretone threshold at 1000, 2000, 3000, and 4000 Hz are each 55 decibels or more, or when the puretone threshold is 30 decibels or less at 1000 Hz, and 70 decibels or more at 2000 Hz. 38 C.F.R. § 4.86 (2011). 

At a VA audiological examination in April 2009, audiometric studies revealed puretone thresholds of 40, 50, 55 and 60 decibels in the right ear and 45, 65, 80, and 75 decibels in the left ear at 1000, 2000, 3000, and 4000 hertz, respectively. The average pure tone threshold in the right ear was 51.25 decibels and in the left ear was 66.25 decibels. Speech discrimination ability was 84 percent, bilaterally. The examiner diagnosed bilateral hearing loss. 

VA audiometric studies conducted in November 2009 revealed puretone thresholds of 45, 55, 60 and 60 decibels in the right ear and 45, 60, 80, and 70 decibels in the left ear at 1000, 2000, 3000, and 4000 hertz, respectively. The average pure tone threshold in the right ear was 55 decibels and in the left ear was 63.75 decibels. Speech discrimination ability was 88 percent in the right ear and 76 percent in the left ear. 

A private audiology report dated March 12, 2010 contained a graph depicting the Veteran's hearing acuity but specific numerical readings at the different threshold levels were not provided. However, the Board may interpret the results of an audiograph because interpretation requires a factual finding, and the Board is empowered to make factual findings in the first instance. Kelly v. Brown, 7 Vet.App. 471 (1995); see also nonprecedential Ponder v. Shinseki, No. 09-0881, 2010 WL 4241571, at *3 (Vet. App. October 28, 2010). The puretone thresholds at 1000, 2000, 3000, and 4000 Hertz, respectively, were 40, 55, 65, and 65 in one (right) ear, and 45, 60, 75 and 75 in the other (left) ear. However, speech discrimination percentages were not provided, and there was no indication such testing was conducted using the Maryland CNC test, as prescribed by 38 C.F.R. § 4.85 for rating purposes.

At a VA audiological examination in February 2012, audiometric studies revealed puretone thresholds of 40, 55, 65 and 65 decibels in the right ear and 45, 60, 75, and 75 decibels in the left ear at 1000, 2000, 3000, and 4000 hertz, respectively. The average pure tone threshold in the right ear was 56 decibels and in the left ear was 64 decibels. Speech discrimination ability was 76 percent in the right ear and 64 percent in the left ear. The examiner diagnosed bilateral hearing loss. 

The findings on the Veteran's audiometric studies in April 2009 correlate to a designation of level II hearing in the right ear and level III hearing in the left ear. The findings in November 2009 correlate to a designation of level II hearing in the right ear and level IV hearing in the left ear. Table VII of § 4.85 provides for a 0 percent (noncompensable) evaluation under Diagnostic Code 6100 when those levels of hearing are demonstrated. A more severe level of hearing loss was not clinically demonstrated until the March 12, 2010 private audiological examination, although speech discrimination findings were not provided for VA rating purposes. The Veteran was afforded another VA audiological evaluation in February 2012 that demonstrated level IV hearing in the right ear and level VI hearing in the left ear. This level of hearing disability warrants a 20 percent rating under Diagnostic Code 6100, which was granted effective the date of the private evaluation - March 12, 2010. Consequently, the clinical evidence shows that the Veteran is not entitled to a compensable rating for his service-connected bilateral hearing loss prior to March 12, 2010, and he is not entitled to a rating in excess of 20 percent at any time during the appeal period. 

The Board is sympathetic to the Veteran's assertions that his level of hearing loss is more severely disabling, particularly with regard to his difficulty hearing people speak, and that he should be compensated accordingly. However, disability ratings for hearing impairment are derived by a mechanical application of the rating schedule to the numeric designations assigned after audiometric evaluations are rendered. Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). Here, a mechanical application of the rating schedule results in a noncompensable rating under Diagnostic Code 6100 prior to March 12, 2010 and a 20 percent rating after that date. 

Ordinarily, VA's Rating Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). An extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.321(b)(1) (2011). 

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three- step inquiry for determining whether a Veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a Veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating. 

With respect to the first prong of Thun, the evidence in this case does not show such an exceptional disability picture that the available schedular evaluation for the service-connected disability is inadequate. The rating criteria reasonably describe the Veteran's disability level and symptomatology due to his service-connected disability. There is no competent credible evidence of record that the Veteran has symptoms of his bilateral hearing loss disability that are not contemplated in the rating criteria. Therefore, a further analysis under Thun is not warranted. 

For these reasons, the Board concludes that the preponderance of the evidence is against the claim. Therefore, the benefit-of-the-doubt doctrine does not apply. The claims for a compensable initial rating for bilateral hearing loss from November 20, 2006 through March 11, 2010, and an initial rating in excess of 20 percent from March 12, 2010 are denied. 38 U.S.C.A. § 5107(b); Alemany, supra. 


ORDER

A compensable initial rating for bilateral hearing loss from November 20, 2006 through March 11, 2010 is denied.

An initial rating in excess of 20 percent for bilateral hearing loss from March 12, 2010 is denied. 



____________________________________________
U. R. POWELL
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs